IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KATHARINA MEYER, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 23-0390-WS-MU |
| | ) |
| RENAL TREATMENT CENTERS – | ) |
| SOUTHEAST, LP, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiffs' motion to remand, motion to stay, and motion to vacate. (Docs. 23-25). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 1, 22, 28-36),[1] and the motions are ripe for resolution.

The two plaintiffs are citizens of Alabama. (Doc. 1-2 at 3). The two entity defendants are citizens only of Delaware and Colorado. (Doc. 1 at 19). Of the six individual defendants, four are citizens of Florida. (*Id.*; Doc. 1-2 at 4-5). The complaint alleges that the fifth individual defendant ("Yusufi") is a resident of Alabama, while the notice of removal asserts that he is a citizen of Oklahoma. (Doc. 1 at 19-20; Doc. 1-2 at 4). The parties agree that the final individual defendant is an Alabama citizen, but the defendants argue that her citizenship is irrelevant because she has been fraudulently joined. (Doc. 1 at 5; Doc. 1-2 at 4).

The complaint, (Doc. 1-2), alleges that the plaintiffs and the entity defendants entered a contract, pursuant to which the plaintiffs agreed to provide certain personnel and to perform certain duties. The term of the contract was ten years, but the entity defendants terminated it after six years. Count One alleges that the entity defendants

---

[1] For reasons stated therein, the defendants' motion for leave to file under seal, (Doc. 8), is **granted**.

thereby breached the contract, and Count Three alleges that they thereby breached a covenant of good faith and fair dealing.  Count Two alleges that Yusufi breached a non-compete agreement with the plaintiffs.  The remaining counts allege against all defendants certain torts associated with the breaches described above.  The complaint does not demand a specific amount as damages.

The plaintiffs deny both that complete diversity exists and that the amount in controversy exceeds $75,000, exclusive of interest and costs.  The defendants, as the parties seeking a federal forum, bear the burden of demonstrating the existence of both these elements of subject matter jurisdiction.  *E.g., Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008) ("A removing defendant bears the burden of proving proper federal jurisdiction.") (internal quotes omitted); *accord Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).

"[W]here jurisdiction is based on a claim for indeterminate damages, ... the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."  *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).  "[A] removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the … jurisdictional requirement."  *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotes omitted); *accord* 28 U.S.C. § 1446(c)(2)(B).

As is its custom, the Court reviewed its subject matter jurisdiction *sua sponte* shortly after the defendants effected removal.[2]  Upon review of the file, the Court was unable to confirm that the amount in controversy exceeds $75,000.  Rather than remand at that juncture, the Court provided the defendants a second opportunity to meet their

---

[2] "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  Because, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue," it "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings."  *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

burden.  (Doc. 16).  The defendants filed a supplemental brief, to which they attached the affidavit of counsel, who reported that, during efforts to reach a negotiated resolution, the plaintiffs demanded a sum substantially above the jurisdictional threshold and provided a reasoned basis for the figure – specifically, that the plaintiffs had retained an economic expert, who had performed an expert analysis reflecting a substantial diminution in the entity plaintiff's business value due to the entity defendants' alleged breach.  (Doc. 18-1 at 2).  Upon review of this material, the Court was satisfied that the defendants had demonstrated, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, but it left the plaintiffs an opportunity to seek remand.  (Doc. 21).

The plaintiffs object to counsel's affidavit on the grounds that the material on which it relies was disclosed in a confidential mediation governed by Alabama's rules on civil mediation, which preclude the disclosure of such material.  (The Court was not made aware of the information's provenance before it entered its order.)  The defendants respond that state confidentiality rules are no barrier to a federal court's consideration of information relevant to the amount in controversy.  *See, e.g., Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974-75 (9th Cir. 2007) (because Federal Rule of Evidence 501 provides that state privileges apply only where state law supplies the rule of decision, California's mediation privilege did not bar the use of material disclosed in such a mediation for the purpose of assessing the amount in controversy).

The Court need not resolve the confidentiality issue.  As the defendants acknowledge, (Doc. 18 at 4), "[s]ettlement offers commonly reflect puffing and posturing, and such a settlement offer is entitled to little weight in measuring the preponderance of the evidence." *Jackson v. Select Portfolio Servicing, Inc*., 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009).  "On the other hand, settlement offers that provide specific information to support the plaintiff's claim for damages suggest the plaintiff is offering a reasonable assessment of the value of his claim and are entitled to more weight." *Id*. (internal quotes omitted).  Defense counsel's affidavit was sufficient to support removal because it identified the support purportedly offered by the plaintiffs for why their settlement figure was a reasonable assessment – the analysis of a retained

economic expert showing a substantial diminution in business value.  The plaintiffs, however, deny they have either a retained expert or a significant damages model.  (Doc. 34 at 3; Doc. 35 at 3).[3]  The Court cannot on this record find by a preponderance of the evidence that the plaintiffs provided specific information to support their claim for damages, and the Court therefore cannot find that the figure mentioned at mediation reflects more than puffing and posturing.[4]

The notice of removal proposed that the Court consider the amount in controversy to be the gross amount of fees the plaintiffs would have earned had the contract not been terminated four years early.  (Doc. 1 at 20-22).  The Court rejected this argument on multiple grounds, including the defendants' failure:  (1) to identify what the gross fees would have been; (2) to explain how the plaintiffs could be seeking recovery of gross fees, as opposed to net income, for work never performed; and (3) to provide a non-speculative means of estimating what those net earnings would have been.  (Doc. 16 at 2).  In their supplemental filing, the defendants identify the gross amount of fees the plaintiffs would have received under the contract.  They concede, however, that they have no basis for estimating the plaintiff's net earnings from the contract.  (Doc. 18 at 7-8).

In their supplemental filing, the defendants also rely on a statement made during mediation regarding the attorney's fees the plaintiffs had incurred, and the defendants ask the Court to add this figure to the amount in controversy.  (Doc. 18 at 5-6).  Attorney's fees can be considered in determining the amount in controversy, but only to the extent they are provided for by statute or contract.  *McKinnon Motors,* 329 F.3d at 808 n.4.  The defendants identify a section of the contract allowing recovery of reasonable attorney's

---

[3] The defendants sought leave to file a surreply addressing the citizenship of Yusufi, (Doc. 37), but they have not sought leave to challenge the plaintiffs' denial of a reasoned basis for the figure mentioned at mediation.

[4] The mediation occurred in May 2022, when the plaintiffs were represented by different counsel.  (Doc. 18-1 at 3; Doc. 22-1).  The complaint was filed by new counsel in September 2023.  (Doc. 1-2 at 2, 14).  Even if former counsel at mediation made the statements attributed to him by the defendants, in light of current counsel's representations the defendants have not shown that the reasoned basis articulated at mediation continued to exist sixteen months later.

fees, (Doc. 18 at 6 n.3), but the provision by its terms restricts recovery to attorney's fees incurred when the plaintiff "seeks … injunctive or other relief," "from a court of competent jurisdiction." (Doc. 17 at 20). The attorney's fees the defendants invite the Court to consider were incurred over a year before this action was filed, and the defendants have not explained how such pre-suit attorney's fees could be captured by this provision.

In their notice of removal, the defendants pointed out that the tort claims seek recovery of punitive damages. (Doc. 1 at 22). The Court responded that, "As this Court has explained, without specific facts to suggest that the defendant's alleged actions were or might have been so egregious or reprehensible as to support a substantial punitive damages award, assigning significant value to such a demand constitutes unvarnished conjecture." (Doc. 16 at 2 (internal quotes omitted)). The defendants in their more recent filings do not rely on the demand for punitive damages to establish the amount in controversy.

Finally, the defendants submit the declaration of their former counsel, who states that the plaintiffs' former counsel, outside the mediation context, twice proposed a settlement figure based on the gross unearned fees under the contract, which well exceed $75,000. (Doc. 28-1). As noted previously, there is no rational basis for treating the gross amount of unearned fees as a measure of damages for breach of contract. Thus, and because the declaration fails to mention any specific information provided by plaintiffs' counsel supporting this demand, the Court cannot consider the demand as based on a reasoned assessment of the claim's value that could meaningfully contribute to demonstrating the amount in controversy.

For reasons set forth herein and in the Court's previous order, the defendants have failed to sustain their burden of showing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. It is therefore unnecessary to

consider the parties' arguments regarding citizenship.  The plaintiffs' motion to remand is **granted**.  This action is **remanded** to the Circuit Court of Escambia County.[5]

DONE and ORDERED this 15th day of December, 2023.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5] The plaintiffs' motion to vacate, (Doc. 25), is **denied**.  The plaintiffs' motion to stay, (Doc. 24), is **denied as moot**.  The defendants' motion for leave to file a surreply, (Doc. 37), is **denied as moot**.